## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NUMBER:** | **20-cr-163** |
| **v.** | : | **DATE FILED:** | **4/29/20** |
| **LEE D. WEISS** | : | **VIOLATIONS:** | |
| | : | **18 U.S.C. § 1343 (wire fraud and attempted wire fraud – 6 counts);** | |
| | : | **18 U.S.C. § 1341 (mail fraud and attempted mail fraud – 2 counts);** | |
| | : | **Notice of Forfeiture** | |

# I N F O R M A T I O N

## COUNTS ONE THROUGH FIVE
### (Wire Fraud Executed January 2015 to March 2015)

**THE UNITED STATES ATTORNEY CHARGES THAT:**

<u>The Defendant and the Entities He Owned, Operated, and Controlled</u>

At all times material to this Information:

1.     Defendant LEE D. WEISS ("WEISS") was a resident of Massachusetts.

2.     Defendant LEE D. WEISS was an owner of, and exercised effective control over, a limited partnership known as Family Endowment Partners, LP ("FEP" or "Family Endowment Partners").  Defendant WEISS exercised this control through his ownership in, and control over, FEP's general partner, FEP LLC.

3.      FEP was registered with the U.S. Securities and Exchange Commission ("SEC") as an investment adviser.  FEP's clients were generally high wealth individuals with substantial sums to invest.

4.      Defendant LEE D. WEISS was responsible for formulating strategy, making personnel decisions, staffing committees, setting priorities, overseeing compliance, and overseeing operations for FEP.  Regardless of their titles, roles, positions, or tenure, all of FEP's employees and staff understood that defendant WEISS was FEP's ultimate authority on all matters, and that he made all decisions of any significance concerning FEP.

5.      Defendant LEE D. WEISS was also the primary relationship manager for a number of FEP's investment advisory clients.  Defendant Weiss had primary responsibility for the selection of investments for the clients for whom he was the primary relationship manager.

6.      FEP charged its clients a quarterly fee based on the value of their assets under management.  The greater the value of the client's assets, the greater was the fee that he or she paid to FEP.

7.      Defendant LEE D. WEISS knew that his investment adviser role imposed on him a fiduciary duty with regard to his clients.  He understood that he was obligated to make investment decisions in his clients' best interests and not his own; that he was required to act with his clients' individual risk characteristics in mind; and that he was required to disclose to his clients any information that they would need in order to make wise investment decisions. Defendant WEISS also knew that he was obligated to disclose to his clients any potential conflicts of interest that affected him or FEP.

8.      Defendant LEE D. WEISS was the owner of sixty to sixty-five percent of an entity known as MIP Global, Inc. (DE) ("MIP Global (DE)").  MIP Global (DE) had no active

operations, acting instead only as a holding company for a number of other entities owned in whole or in part by defendant WEISS.  The remaining shares of MIP Global (DE) were owned by various of defendant WEISS's employees.  Defendant WEISS functioned as MIP Global (DE)'s chief executive officer and exercised control over MIP Global (DE).

9.     Defendant LEE D. WEISS was the owner of sixty-five percent of an entity known as Mosaic Enterprises, Inc. ("Mosaic Enterprises (PR)").  Defendant WEISS exercised effective control over Mosaic Enterprises (PR).

10.     Mosaic Enterprises (PR) was the owner of an entity known as MIP Global Bahamas, LTD ("MIP Bahamas"), a broker-dealer.  Defendant LEE D. WEISS was its indirect owner and exercised effective control over MIP Bahamas.

11.     Defendant LEE D. WEISS was the indirect owner of and exercised effective control over Alliance Partners Fund, LTD (the "Alliance Partners Fund").

<u>FEP Fund I</u>

12.     FEP created a fund for its clients to pool their money and to invest in other third-party funds.  Known as FEP Fund I ("Fund I"), it was represented to be a "fund-of-funds," with at least ninety percent of its assets to be invested in funds owned, operated, and managed by other parties.  Based on these representation made to investors, only the remaining ten percent of client funds were available for FEP's own fund managers, such as defendant LEE D. WEISS, to invest in other types of assets or vehicles.

13.     Based on its purported nature and the stability of its investments, defendant LEE D. WEISS marketed Fund I as a safe and appropriate investment vehicle for clients of FEP.

14.     Notwithstanding the limitations that were supposed to apply to Fund I, and notwithstanding his own fiduciary duties to the clients of FEP and Fund I, defendant LEE D.

WEISS transferred substantial amounts of money belonging to Fund I to an individual identified here as I.E.  These funds were transferred purportedly as investments in business ventures that were owned, operated, and/or promoted by I.E. in businesses in Eastern Europe and Africa. Because of their location, the companies and their assets were beyond the reach of American law.  I.E. was not a U.S. citizen and was a person who also was beyond the reach of U.S. process.

15.     From his experience with I.E. and the investments in the Eastern European and African businesses, no later than July 2011, defendant LEE D. WEISS learned—if he did not already know—that I.E. was unable or unwilling to repay or meet his obligations to defendant WEISS's investors.

16.     Notwithstanding his knowledge and experience with I.E., notwithstanding the limitations that were supposed to apply to Fund I, and notwithstanding his own fiduciary duties to the clients of FEP and Fund I, between in and about March 2012 and in or about May 2012, defendant LEE D. WEISS caused Fund I to invest about $10,000,000 in a venture known as Globe 360.

17.     The Globe 360 venture was carried out through various entities but, as defendant LEE D. WEISS well knew, the Globe 360 venture was ultimately under the domination and control of I.E.

18.     The Globe 360 venture was created to acquire, own, and operate a U.S. tobacco company that had previously been seized by the U.S. government and whose assets were being auctioned.  I.E. selected an individual, identified here as B.H., to be the Chief Executive Officer of Globe 360.

19.     Defendant LEE D. WEISS raised in excess of $12.5 million to capitalize the Globe 360 venture.  About $10,000,000 of these funds came from Fund I.  In addition, defendant WEISS caused individual clients of his, a married couple identified here as J. & J.S., to invest about $2,500,000 of their own funds in Globe 360.

20.     Of the $12.5 million raised to fund Globe 360, approximately $8 million was used to acquire the assets of the seized tobacco plant from the U.S. government.  The remaining approximately $4.5 million was needed for, and was intended to, capitalize the Globe 360 venture and to fund its operations until it could become profitable through sales of tobacco products.

21.     On or about May 25, 2012, despite the fact that he was not an authorized signatory on the Globe 360 bank account, I.E. arranged to transfer about $4.2 million out of Globe 360's bank account and into the account of another company that I.E. controlled.  This left Globe 360 inadequately capitalized and virtually assured that the Globe 360 venture would fail.

22.     When B.H. confronted I.E. about his transfer from Globe 360's bank account of funds that were critically needed by Globe 360, I.E. told B.H. that I.E. needed the funds to run his other companies.

23.     On or about March 25, 2013, B.H.  informed defendant LEE D. WEISS that I.E. had misappropriated $4.2 million in operating capital that Globe 360 desperately needed to sustain operations and, that if it were not returned, the Globe 360 venture would certainly fail.

24.     I.E. never returned the $4.2 million in funds that he had taken from Globe 360.

25.     Notwithstanding his knowledge of the precarious state of Globe 360's finances and of I.E.'s misappropriation of Globe 360 funds needed to continue operations, through at least on or about February 9, 2015, defendant LEE D. WEISS continued to assure his clients that their investments in Globe 360 and Fund I were not only secure but had increased in value.

26.     Notwithstanding his knowledge of the precarious state of Globe 360's finances and of I.E.'s misappropriation of Globe 360 funds needed to continue operations, on or about March 6, 2015, defendant LEE D. WEISS caused a Cayman Islands accounting firm, identified here as Audit Firm No. 1, to issue what purported to be an independent auditors report of FEP as of December 31, 2013 (the "2013 Audit Report").  That report offered only a qualified opinion of FEP because the auditors were unable to obtain sufficient audit evidence to support management's estimate of the fair value of certain private loans and investments that had been made by Fund I.  Those estimates were supplied by defendant WEISS.  Globe 360 was one of the investments for which Audit Firm No. 1 relied on management's estimate of fair value. Defendant WEISS knew, when the 2013 Audit Report was issued, that the value that he had ascribed to Globe 360 was false and fraudulent in that it was materially and substantially overstated.

27.     These false representations were intended to, and did, prevent clients from discovering that their investments, and Fund I's investments, in Globe 360 had failed.  Defendant LEE D. WEISS knew that such knowledge might cause clients to move their accounts elsewhere. These false representations also allowed defendant WEISS to inflate the amount of fees that FEP's clients paid to FEP by falsely overstating the value of their portfolios.

<u>The Individual Client Victims</u>

<u>Victims J. & J.S.</u>

28.     J. & J.S. had sold a family business started by J.S.'s father.  Because they had lost

money in the recession and market crash of 2008 and 2009, when J.S. met defendant LEE D.

WEISS, he told defendant WEISS that his primary concern was to avoid losing money, and that

he would trust defendant WEISS to preserve their capital.  Defendant WEISS assured J. & J.S.

that he understood their priorities, that he was not trying "to hit a home run," but instead make

sure that J. & J.S.' children and unborn grandchildren were securely provided for.

29.     In or about November, 2012, defendant LEE D. WEISS caused J. & J.S. to make

an investment of $750,000 in MIP Global (DE).  Defendant WEISS led J. & J.S. to believe that

MIP Global (DE) was not controlled by defendant WEISS.  Had they known that it was

controlled by defendant WEISS, then J. & J.S. would never have made an investment in MIP

Global (DE).

30.     In 2013, victims J. & J.S. instituted an action against defendant LEE D. WEISS

and FEP with the American Arbitration Association.

31.     In April 2015, an arbitration panel issued an award in favor of J. & J.S. and

against defendant LEE D. WEISS and FEP in an amount in excess of $48,000,000.  That award

found that defendant WEISS had breached his fiduciary duty, had made investments with

minimal or non-existent due diligence, had issued portfolio statements that were misleading, and

had recommended investments that were entirely inappropriate for J. & J.S.  Defendant WEISS

falsely reassured his clients that the award would not impair their investments.

<u>Victim J.H.</u>

32.     Defendant LEE D. WEISS introduced himself to an individual, identified here as

J.H., in about 2009 after overhearing a telephone conversation during which J.H. discussed with

another person the fact that J.H.'s parents had fallen victim to the notorious Ponzi scheme that had been operated by Bernie Madoff.  Defendant WEISS told J.H. that he was an investment adviser and represented that he could assist J.H. in dealing with her parents' Madoff-related problems.

33.     J.H. was deeply affected by the losses that her parents had suffered as a consequence of the Madoff Ponzi scheme, and initially refused defendant LEE D. WEISS's repeated offers of assistance.  Nonetheless, defendant WEISS continued to contact and to solicit J.H.  After approximately one year, J.H. agreed to invest funds with defendant WEISS, subject to the condition that they be placed in legitimate third-party institutional investments.

34.     On the advice of defendant LEE D. WEISS, on or about March 17, 2014, J.H. made an investment of $1,250,000 in MIP Global (DE).  Those funds were purportedly a private debt investment.  Defendant WEISS led J.H. to believe that MIP Global (DE) was not controlled by defendant WEISS.  Had she known that it was controlled by defendant WEISS she would never have made the investment.

35.     Before J.H. transferred her investment of $1,250,000, to the bank account that defendant LEE D. WEISS had provided her, the balance in that account was only about $2,666.93.  By on or about March 27, 2014, within ten days of the transfer of J.H.'s funds for investment, defendant WEISS had transferred all of those funds out of the bank account for his own purposes unrelated to any legitimate investment in MIP Global (DE).  After multiple transfers through different bank accounts, defendant WEISS used his misappropriations of J.H.'s money, among other things, to make payments to: (i) other FEP clients unrelated to J.H.; (ii) defendant WEISS's personal bank account; (iii) FEP business investors unrelated to J.H.; (iv)

FEP employees; (v) a charity with which defendant WEISS was associated; and (vi) defendant WEISS's country club fees.

36.     On the advice of defendant LEE D. WEISS, on or about March 25, 2014, J.H. made an investment of $1,000,000 in MIP Bahamas by wire transfer to an account in the name of Mosaic Enterprises (PR).  Those funds were purportedly an equity investment.  Defendant WEISS led J.H. to believe that MIP Bahamas was not controlled by defendant WEISS.  Had she known that it was controlled by defendant WEISS she would never have made the investment.

37.     Before J.H. transferred her investment of $1,000,000, to the bank account that defendant LEE D. WEISS had provided her, the balance in that account was only about $551.03. By on or about March 28, 2014, within three days of the transfer of J.H.'s funds for investment, defendant WEISS had transferred all of those funds out of the bank account for his own purposes unrelated to any legitimate investment in MIP Bahamas.  After multiple transfers through different bank accounts, defendant WEISS used his misappropriations of J.H.'s money to make payments to an FEP client unrelated to J.H. and an FEP business investor unrelated to J.H.

38.     On the advice of defendant LEE D. WEISS, on or about June 20, 2014, J.H. made an investment of $250,000 in MIP Global (DE).  Those funds were purportedly a debt investment.  Defendant WEISS led J.H. to believe that MIP Global (DE) was not controlled by defendant WEISS.  Had she known that it was controlled by defendant WEISS she would never have made the investment.

39.     Before J.H. transferred her investment of $250,000, to the bank account that defendant LEE D. WEISS had provided her, the balance in that account was only about $3,012.39.  By on or about July 2, 2014, within two weeks of the transfer of J.H.'s funds for investment, defendant WEISS had transferred at least $230,000 of those funds out of the bank

account for his own purposes unrelated to any legitimate investment in MIP Global (DE). Defendant WEISS used his misappropriations of J.H.'s money, among other things, to make payments to: (i) an American Express account in the name of FEP employee; (ii) payroll for FEP; and (iii) an individual unrelated to J.H. who was a partner of defendant WEISS's in a business other than MIP Global (DE).

40. On the advice of defendant LEE D. WEISS, on or about August 11, 2014, J.H. made an investment of $750,000 in MIP Global (DE). Those funds were purportedly a debt investment. Defendant WEISS led JH to believe that MIP Global (DE) was not controlled by defendant WEISS. Had she known that it was controlled by defendant WEISS she would never have made the investment.

41. Before J.H. transferred her investment of $750,000, to the bank account that defendant LEE D. WEISS had provided her, the balance in that account was only about $710. By on or about September 8, 2014, within one month of the transfer of J.H.'s funds for investment, defendant WEISS had transferred at least $680,000 of those funds out of the bank account for his own purposes unrelated to any legitimate investment in MIP Global (DE). Defendant WEISS used his misappropriations of J.H.'s money, among other things, to make payments to: (i) a law firm handling the arbitration brought by victims J. & J.S.; (ii) payroll for FEP; (iii) an American Express account in the name of an FEP employee; (iv) a car payment for defendant WEISS's Audi; (v) credit cards in the name of defendant WEISS; (vi) loan and bill payments for the benefit of defendant WEISS; and (vii) the Pine Brook Country Club. In addition, without J.H.'s knowledge that she was getting back her own recently invested money, on or about September 2, 2014, defendant WEISS caused more than $20,000 of J.H.'s own funds

that she had just invested, to be returned to J.H. under the false representation that it represented a return on her earlier investments.

42.     On or about February 9, 2015, defendant LEE D. WEISS caused a portfolio statement to be issued to J.H. that falsely inflated the value of her investments.

43.     In or about March 2015, defendant LEE D. WEISS invited J.H. and her husband to his offices in Boston, Massachusetts, for an in-person meeting to falsely reassure J.H. and her husband about the security of their investments made through him.  During this meeting, among other things, defendant WEISS falsely represented that FEP had no relationship with MIP Global (DE) and MIP Bahamas.  Defendant WEISS also misleadingly discussed MIP Global (DE) and MIP Bahamas as though they were entities that were not controlled by him.

<u>Victim B.G.</u>

44.     An individual, identified here as B.G., invested with the Ballamor Capital Management ("Ballamor") firm which was closed due to the fraud of its founder.  When Ballamor's accounts were taken over by FEP, B.G. elected to remain with FEP.  As a consequence, defendant LEE D. WEISS became B.G.'s financial advisor and his primary source of investment information from FEP.  BG met with defendant WEISS several times each year at B.G.'s home.  Because of his experience with Ballamor, B.G. made it clear to defendant WEISS that he did not want to invest in any entities or funds  managed by defendant WEISS but instead wanted only arm's length investments.

45.     On the advice of defendant LEE D. WEISS, on or about March 28, 2014, B.G. made an investment of $500,000 in MIP Global (DE).  Those funds were purportedly a debt investment.  Defendant WEISS led B.G. to believe that MIP Global (DE) was not controlled by

defendant WEISS.  Had he known that it was controlled by defendant WEISS, B.G. would never have made the investment.

46.     At the direction of defendant LEE D. WEISS, B.G. transferred $500,000 into the bank account of MIP Global (DE).  Before the transfer, MIP Global (DE)'s bank account balance was only about $6,188.83.  On or about March 28, 2014, the same day as the transfer of B.G.'s funds for investment, defendant WEISS transferred all of BG's $500,000 out of the bank account for his own purposes unrelated to any legitimate investment in MIP Global (DE).  Defendant WEISS used his misappropriations of B.G.'s money, among other things, to make payments to: (i) an FEP victim-investor unrelated to BG; and (ii) an American Express account in the name of an FEP employee.

47.     On the advice of defendant LEE D. WEISS, on or about April 3, 2014, B.G. made another investment of $500,000 in MIP Global (DE).  Those funds were purportedly a debt investment.  Defendant WEISS led B.G. to believe that MIP Global (DE) was not controlled by defendant WEISS.  Had he known that it was controlled by defendant WEISS, B.G. would never have made the investment.

48.     At the direction of defendant LEE D. WEISS, B.G. transferred $500,000 into the bank account of MIP Global (DE).  Before the transfer, MIP Global (DE)'s bank account balance was only about $75.85.  On or about April 3, 2014, on the same day as B.G. transferred his funds for investment, defendant WEISS transferred approximately $67,000 of BG's funds, and by on or about April 28, 2014, had transferred a total of about $406,000 of BG's $500,000 out of the bank account, for his own purposes unrelated to any legitimate investment in MIP Global (DE). Defendant WEISS used his misappropriations of B.G.'s money, among other things, to make payments to: (i)  two law firms representing a Weiss entity unrelated to BG or MIP Global (DE)

in a contract dispute in North Carolina; (ii) an American Express account in the name of an FEP employee; (iii) a business partner of defendant WEISS in the Bahamas; (iv) a payment on a personal loan belonging to defendant WEISS; and (v) to defendant WEISS's personal brokerage account.

49.     On the advice of defendant LEE D. WEISS, on or about September 24, 2014, B.G. made an investment of $650,000 in MIP Global (DE).  Those funds were purportedly a debt investment.  Defendant WEISS led B.G. to believe that MIP Global (DE) was not controlled by defendant WEISS.  Had he known that it was controlled by defendant WEISS, B.G. would never have made the investment.

50.     At the direction of defendant LEE D. WEISS, B.G. transferred $650,000, into the bank account of Alliance Partners Fund in order to make the investment in MIP Global (DE). Before the transfer, Alliance Partners Fund's bank account balance was only about $954.42.  By on or about October 2, 2014, within one month of the transfer of B.G.'s funds for investment, defendant WEISS had transferred at least $575,000 of those funds out of the bank account for his own purposes unrelated to any legitimate investment in MIP Global (DE).  Defendant WEISS used his misappropriations of B.G.'s money, among other things, to make payments to: (i) a law firm; (ii) payroll for FEP; (iii) an American Express account for the benefit of FEP; and (iv) an account in the name of defendant WEISS.

51.     On the advice of defendant LEE D. WEISS, between on or about December 10, 2014, and on or about December 18, 2014, B.G. made a series five investments totaling $500,000 in MIP Global (DE).  Those funds were purportedly private debt investments. Defendant WEISS led B.G. to believe that MIP Global (DE) was not controlled by defendant

WEISS.  Had he known that it was controlled by defendant WEISS, B.G. would never have made the investment.

52.     At the direction of defendant LEE D. WEISS, B.G. transferred a total of $500,000 into the bank account of MIP Global (DE).  Before the transfer of B.G.'s $500,000, MIP Global (DE)'s bank account balance was only about $276.  By on or about December 23, 2014, within five days of the transfers of B.G.'s funds for investment, defendant LEE D. WEISS had transferred at least $479,000 of those funds out of the bank account for his own purposes unrelated to any legitimate investment in MIP Global (DE).  Defendant WEISS used his misappropriations of B.G.'s money, among other things, to make payments to: (i) several law firms; (ii) payroll for FEP; (iii) rent for FEP; (iv) the American Arbitration Association for the benefit of FEP; (v) an employee of FEP; and (vi) a director of a Weiss affiliated company.  In addition, defendant WEISS used "investment" funds to make a $15,000 payment to himself.

53.     In or about May 2015, in a meeting with B.G., defendant LEE D. WEISS falsely represented that he had no interest in MIP Global (DE).  Defendant WEISS falsely reassured B.G. that B.G.'s investment was an arm's length independent investment.

54.     On or about February 9, 2015, defendant LEE D. WEISS caused a portfolio statement to be issued to B.G. that falsely inflated the value of his investments.

<u>Victims P.B., P.B. II, and P.B. Trust</u>

55.     An individual, identified here as P.B., was an elderly and trusting investor.  P.B. and his wife, identified here as N.B., had two children, an adult son, identified here as P.B. II, and an adult daughter who suffered a stroke as a teenager and who required constant and increasing care that P.B. and N.B. provided.  P.B. trusted defendant LEE D. WEISS to safely,

securely, and honestly manage his money; P.B. II's money; the money in a trust established by P.B., the P.B. Trust; and the money in a foundation established by P.B., the P.B. Foundation.

56.     On the advice of defendant LEE D. WEISS, on or about February 7, 2014, P.B. made an investment of $1,000,000 in MIP Global (DE).  Those funds were purportedly a private debt investment.  P.B. did not know that MIP Global (DE) was controlled by defendant WEISS and that he was therefore making loans to his own investment adviser.  Had he known that MIP Global (DE) was controlled by defendant WEISS he would never have made the investment.

57.     At the direction of defendant LEE D. WEISS, P.B. transferred $1,000,000 into the bank account of MIP Global (DE).  Before the transfer of P.B.'s $1,000,000, MIP Global (DE)'s bank account balance was only about $2,506.48  Within two weeks of the transfers of P.B.'s funds for investment, defendant  WEISS had transferred at least $850,000 of those funds out of the bank account for his own purposes unrelated to any legitimate investment in MIP Global (DE).  Defendant WEISS used his misappropriations of P.B.'s money, among other things, to make payments to: (i) an FEP corporate credit card; (ii) payroll for FEP; (iii) brokerage and bank accounts in defendant WEISS's name; (iv) the Pine Brook Country Club; (v) Boston Red Sox tickets; (vi) a charity with which defendant WEISS was associated; (vii) a car payment for defendant WEISS's Audi; and (viii) FEP business investors unrelated to P.B.

58.     On the advice of defendant LEE D. WEISS, on or about June 5, 2014, the P.B. Foundation made an investment of $500,000 in MIP Global (DE).  Those funds were purportedly a private debt investment.  P.B. did not know that MIP Global (DE) was controlled by defendant WEISS and that his foundation was therefore making loans to its own investment adviser.  Had P.B. known that MIP Global (DE) was controlled by defendant WEISS, the P.B. Foundation would never have made the investment.

59.     At the direction of defendant LEE D. WEISS, the P.B. Foundation transferred $500,000 into the bank account of MIP Global (DE).  Before the transfer of the P.B. Foundation's $500,000, MIP Global (DE)'s bank account balance was only about $471.55.  By on or about June 12, 2014, within one week of the transfers of the P.B. Foundation's funds for investment, defendant  WEISS had transferred all $500,000 of those funds out of the bank account for his own purposes unrelated to any legitimate investment in MIP Global (DE). Defendant WEISS used his misappropriations of the P.B. Foundation's money, among other things, to make payments to: (i) an FEP corporate credit card; (ii) payroll for FEP; (iii) an FEP employee; and (iv) FEP business investors unrelated to P.B. or the P.B. Foundation.

60.     On the advice of defendant LEE D. WEISS, on or about June 27, 2014, the P.B. Trust made an investment of $600,000 in MIP Global (DE).  At the direction of defendant WEISS, the Trust P.B. transferred $600,000, into the bank account of MIP Global (DE) in order to make the investment in MIP Global (DE).  Those funds were purportedly a private debt investment.  P.B. did not know that MIP Global (DE) was controlled by defendant WEISS and that the P.B. Trust was therefore making loans to its own investment adviser.  Had P.B. known that MIP Global (DE) was controlled by defendant WEISS the P.B. Trust would never have made the investment.

61.     Before the transfer of the P.B. Trust's $600,000, MIP Global (DE) bank account balance was only about $97,000.  By on or about July 1, 2014, within four days of the transfer of the P.B. Trust's funds for investment, defendant LEE D. WEISS had transferred at least $530,000 of those funds out of the bank account for his own purposes unrelated to any legitimate investment in MIP Global (DE).  Defendant WEISS used his misappropriations of the P.B. Trust's money, among other things, to make payments to: (i) an FEP corporate credit card; (ii)

payroll for FEP; (iii) brokerage and bank accounts in defendant WEISS's name; and (iv) an FEP business investor unrelated to P.B.

62.　　On or about February 9, 2015, defendant LEE D. WEISS caused a portfolio statement to be issued to P.B. that falsely inflated the value of his investments.

<u>Wire Communications in Furtherance of the Scheme</u>

63.　　At the direction of defendant LEE D. WEISS, false portfolio statements were prepared for the following victims bearing the following dates based on information sent by wire to the Eastern District of Pennsylvania by defendant WEISS via FEP's email server in Massachusetts, and the false portfolio statements were themselves sent by wire from the Eastern District of Pennsylvania to defendant WEISS via FEP's email server in Massachusetts:

a.　　B.G., dated January 23, 2014;

b.　　B.G., dated February 26, 2014;

c.　　B.G., dated March 31, 2014;

d.　　P.B., dated March 31, 2014;

e.　　P.B., dated April 30, 2014;

f.　　B.G., dated April 30, 2014;

g.　　P.B., dated June 12, 2014;

h.　　P.B., dated June 19, 2014;

i.　　B.G., dated June 26, 2014; and

j.　　J.H., dated September 30, 2014.

64.　　On October 31, 2014, timestamped at about 4:08 p.m., an employee of FEP located in the Eastern District of Pennsylvania, sent an e-mail via the Internet to defendant LEE

D. WEISS, outside the Commonwealth of Pennsylvania, enclosing the false quarterly portfolio statement of victim J.H.

65.     On November 13, 2014, timestamped at about 10:12 a.m., an employee of FEP located in the Eastern District of Pennsylvania, sent an e-mail via the Internet to defendant LEE D. WEISS, outside the Commonwealth of Pennsylvania, enclosing the false quarterly portfolio statement of victim B.G.

66.     On November 13, 2014, timestamped at about 12:15 p.m., defendant LEE D. WEISS, from a location outside the Commonwealth of Pennsylvania, sent an e-mail via the Internet to an individual employee of FEP located in the Eastern District of Pennsylvania, identified here as T.K.C., directing her to send B.G. a copy of the false quarterly portfolio statement relating to his accounts.

67.     On November 13, 2014, timestamped at about 12:24 p.m., defendant LEE D. WEISS, from a location outside the Commonwealth of Pennsylvania, sent an e-mail via the Internet to T.K.C., an employee of FEP located in the Eastern District of Pennsylvania, informing her that:  "'We made payroll' HAHA."

68.     On November 14, 2014, timestamped at about 1:04 p.m., defendant LEE D. WEISS, who was located outside the Commonwealth of Pennsylvania, sent an e-mail via the Internet to an individual employee of FEP located in the Eastern District of Pennsylvania, identified here as S.K., directing S.K. to take the fee for J.H.'s charitable account from J.H.'s individual bank account at "Bank No. 1."

69.     On November 19, 2014, timestamped at about 9:27 p.m., defendant LEE D. WEISS, who was located outside the Commonwealth of Pennsylvania, sent an e-mail via the Internet to S.K. and T.K.C., employees of FEP located in the Eastern District of Pennsylvania,

18

directing S.K. and T.K.C. to send him financial information for victims B.G. and P.B. as he was scheduled to speak with them on the telephone over the next two days.

70.     On November 20, 2014, timestamped at about 1:03 p.m., defendant LEE D. WEISS, who was located outside the Commonwealth of Pennsylvania, sent an e-mail via the Internet to S.K., an employee of FEP located in the Eastern District of Pennsylvania, asking S.K. whether B.G.'s funds were at Fidelity or whether defendant WEISS could make investments on BG's behalf.

71.     On November 20, 2014, timestamped at about 1:41 p.m., S.K., an employee of FEP located in the Eastern District of Pennsylvania, sent an e-mail via the Internet to defendant LEE D. WEISS, who was located outside the Commonwealth of Pennsylvania, enclosing a false portfolio statement dated September 30, 2014, for B.G.; a false portfolio statement dated November 19, 2014, for P.B. II; and a false portfolio statement dated November 19, 2014, for the P.B. Trust.

72.     On November 20, 2014, timestamped at about 6:45 p.m., defendant LEE D. WEISS, who was located outside the Commonwealth of Pennsylvania, sent an e-mail via the Internet to B.G. and to T.K.C., an employee of FEP located in the Eastern District of Pennsylvania, confirming B.G.'s agreement to, among other things, purchase MIP Global (DE).

73.     On November 24, 2014, timestamped at about 8:41 a.m., an individual employee of FEP who was located outside the Commonwealth of Pennsylvania, identified here as J.W., sent an e-mail via the Internet to defendant LEE D. WEISS and to S.K., an employee of FEP located in the Eastern District of Pennsylvania, enclosing an e-mail from victim J.H. and asking for help with the issue that J.H. was raising.  J.H. had attached FEP's fourth quarter billing

statement and third quarter portfolio statement and wanted to know why her portfolio value had decreased more than $3 million.

74.     On November 25, 2014, timestamped at about 11:13 a.m., an employee of FEP located in the Eastern District of Pennsylvania, sent an e-mail via the Internet to victim P.B., outside the Commonwealth of Pennsylvania, enclosing the September 30, 2014, quarterly report relating to the investments of the P.B. Trust.

75.     On November 25, 2014, timestamped at about 5:06 p.m., an employee of FEP located in the Eastern District of Pennsylvania, sent an e-mail via the Internet to P.B. II, outside the Commonwealth of Pennsylvania , enclosing the September 30, 2014, quarterly report relating to his investments.

76.     On December 1, 2014, timestamped at about 6:10 p.m., an employee of FEP located in the Eastern District of Pennsylvania, sent an e-mail via the Internet to defendant LEE D. WEISS, outside the Commonwealth of Pennsylvania, enclosing the November 21, 2014, account statements of victim J.H.

77.     On December 1, 2014, timestamped at about 2:01 p.m., defendant LEE D. WEISS, outside the Commonwealth of Pennsylvania, sent an e-mail via the Internet to victim B.G. enclosing an invoice for FEP's fees for the third quarter of 2014.

78.     On January 30, 2015, timestamped at about 4:24 p.m., an employee of FEP located in the Eastern District of Pennsylvania, sent an e-mail via the Internet to defendant LEE D. WEISS, outside the Commonwealth of Pennsylvania, enclosing a summary of FEP's billing for the first quarter of 2015.  Included among the listed client-victims was B.G.

79.     On February 13, 2015, timestamped at about 9:26 a.m., defendant LEE D. WEISS sent an e-mail via the Internet from outside the Commonwealth of Pennsylvania to S.K., an

employee of FEP located in the Eastern District of Pennsylvania, in which defendant WEISS

directed S.K. to prepare and send victim B.G.'s quarterly bill based on the "best information we

have today."

80.    On February 17, 2015, timestamped at about 1:42 p.m., an individual employee of

FEP located outside the Commonwealth of Pennsylvania, identified here as C.N., sent an e-mail

chain via the Internet to S.K., an employee of FEP located in the Eastern District of

Pennsylvania, in which, among other things, C.N. conveyed defendant LEE D. WEISS's

direction that S.K. extract fees from a particular's client's account, as well as C.N.'s assurance

that S.K. would that day send an invoice to victim B.G. for fees.

81.    On March 18, 2015, timestamped at about 8:52 p.m., an individual employee of

MIP Global (DE) located outside the Commonwealth of Pennsylvania, identified here S.L., sent

an e-mail chain via the Internet to T.K.C., an employee of FEP located in the Eastern District of

Pennsylvania, and defendant LEE D. WEISS.  That email from S.L. enclosed a copy of B.G.'s

January 31, 2015, portfolio statement, explained that B.G.'s accountants were seeking to validate

that statement, and offered to set up a conference call to "discuss an approach . . . ."

82.    On March 19, 2015, timestamped at about 2:59 a.m., defendant LEE D. WEISS

sent an e-mail via the Internet from outside the Commonwealth of Pennsylvania to T.K.C., an

employee of FEP located in the Eastern District of Pennsylvania, in which defendant WEISS

said that he knew what B.G.'s accountants wanted and directed T.K.C. to "put together what you

can . . . ."

83.    On November 1, 2015, timestamped at about 10:25 p.m., defendant LEE D.

WEISS sent an e-mail from Massachusetts to J.H. in Massachusetts via the Internet through a

state other than the Commonwealth of Massachusetts, in which defendant WEISS reassured J.H.

that that her debt investments in MIP Global and her equity investment in MIP Bahamas were secure and that she could expect payment shortly.

Mailings in Furtherance of the Scheme

84.     On or about December 10, 2014, an employee or assistant to victim B.G. sent via the U.S. Mail or interstate commercial carrier check number 2505 in the amount of about $35,965.76, to an employee of FEP located in the Eastern District of Pennsylvania, in payment of B.G.'s third quarter 2014 fee to FEP for financial advisory and asset management services.

85.     On or about March 4, 2015, an employee or assistant to victim B.G. in California sent via the U.S. Mail or interstate commercial carrier check number 2522 in the amount of about $35,965.76, to an employee of FEP located in the District of Massachusetts, in payment of B.G.'s first quarter 2015 fee to FEP for financial advisory and asset management services.

## THE SCHEME TO DEFRAUD

86.     From in or about  July 2011 to in or about  November 1, 2015, in Wayne and West Chester, in the Eastern District of Pennsylvania, and elsewhere, defendant

## LEE D. WEISS

devised and intended to devise a scheme to defraud clients of FEP Fund I, clients P.B., P.B. II, P.B. Trust, and P.B Foundation; client B.G.; client J.H.; and clients J. & J.S., and to obtain money  and property by means of false and fraudulent promises, representations, and promises.

## MANNER AND MEANS

It was part of the scheme that:

87.     Defendant LEE D. WEISS relied on his connections, contacts, and resume to locate wealthy individuals who sought to retain an investment adviser to manage their investments.

88.     Defendant LEE D. WEISS falsely assured his clients and prospective clients that he would manage their investments according to their wishes and in their best interests.

89.     Defendant LEE D. WEISS falsely assured his clients and prospective clients that he would manage their investments cautiously, prudently, and conservatively, recognizing that their investment goals were primarily the preservation of their capital and avoidance of risk.

90.     Defendant LEE D. WEISS, created many different entities with similar sounding names, all of which were controlled by him.

91.     Defendant LEE D. WEISS provided explicit or implicit false assurances to his clients that the investments that he proposed, such as MIP Global (DE) and MIP Bahamas, were arm's length investments when, in truth and in fact, the companies were owned or controlled by defendant WEISS.

92.     In an attempt to protect himself from the consequences of his fraudulent conduct, defendant LEE D. WEISS provided written disclosures to his clients that contradicted the assurances that he provided, but which defendant WEISS knew—in view of the relationship of trust and the representations made by him—would not actually inform his clients that he was recommending that they invest in companies owned and controlled by defendant WEISS.

93.     Without their informed consent, defendant LEE D. WEISS obtained substantial cash investments from his clients in companies owned and controlled by defendant WEISS.

94.     Defendant LEE D. WEISS caused the funds purportedly invested by his clients to be moved from bank account to bank account and entity to entity in an effort to obscure its true source and purpose.

95.     Defendant LEE D. WEISS caused the funds purportedly invested by his clients to be used for purposes unrelated to any legitimate investment in the entities in which he had

induced his clients to invest, including for his own personal benefit and for the benefit of other entities owned by him.

96.     Defendant LEE D. WEISS caused false and inflated portfolio statements to be issued to his clients, and provided them with other written and oral assurances, so that they would not know that their funds had been lost, squandered, and misappropriated.

97.     Defendant LEE D. WEISS caused false and inflated portfolio statements to be issued to his clients, and provided them with other written and oral assurances, so that they would not try to redeem their investments, thereby forcing defendant WEISS to either provide them with money or reveal the true state of their portfolios.

98.     Defendant LEE D. WEISS made or caused to be made investments from Fund I that were outside the scope of, and the limitations that were supposed to apply to, Fund I.

99.     Defendant LEE D. WEISS made or caused to be made investments from Fund I that he knew were unduly risky and inappropriate, but were in entities owned, operated, or controlled by himself or persons who provided or offered to provide him with personal financial benefits.

100.    Defendant LEE D. WEISS caused false and inflated portfolio statements to be issued to his clients, and provided them with other written and oral assurances, so that they would continue to pay fees to defendant WEISS based on inflated asset values.

101.    Defendant LEE D. WEISS failed to inform his clients that the investments recommended by him were owned or controlled by defendant WEISS so that he could charge those clients multiple fees for managing the same money.

## THE WIRINGS

102.    On or about each of the dates set forth below, in the Eastern District of

Pennsylvania, and elsewhere, having devised and intending to devise this scheme, the defendant,

## LEE D. WEISS,

for the purpose of executing the scheme described above, and attempting to do so, caused to be

transmitted by means of wire communication in interstate commerce the signals and sounds

described below, each transmission constituting a separate count:

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION |
|-------|--------------------|-------------|
| ONE | January 30, 2015 | An employee of FEP in the Eastern District of Pennsylvania sent an e-mail via the Internet to defendant LEE D. WEISS enclosing a summary of FEP's billing for the first quarter of 2015. |
| TWO | February 13, 2015 | Defendant LEE D. WEISS sent an e-mail via the Internet to S.K.,  in the Eastern District of Pennsylvania, in which defendant WEISS directed S.K. to prepare and send victim B.G.'s quarterly bill based on the "best information we have today." |
| THREE | February 17, 2015 | An employee of FEP sent an e-mail chain via the Internet to S.K., in the Eastern District of Pennsylvania, which, conveyed defendant LEE D. WEISS's direction that S.K. extract fees from a particular's client's account and confirmed that S.K. would send victim B.G. and invoice for fees. |
| FOUR | March 18, 2015 | An employee of MIP Global (DE) sent an e-mail chain via the Internet to an employee of FEP  in the Eastern District of Pennsylvania and defendant LEE D. WEISS enclosing a copy of victim B.G.'s January 31, 2015, portfolio statement. |
| FIVE | March 19, 2015 | Defendant LEE D. WEISS sent an e-mail via the Internet to T.K.C. in the Eastern District of Pennsylvania, in which defendant WEISS directed T.K.C. to "put together what you can . . . ." |

All in violation of Title 18, United States Code, Sections 1343.

## COUNT SIX
### (Wire Fraud Executed November 2015)

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 85 of Counts One through Five are incorporated here.

### THE SCHEME TO DEFRAUD

2.      From in or about  July 2011, to in or about  November 1, 2015, in Boston, in the District of Massachusetts, the defendant

### LEE D. WEISS

devised and intended to devise a scheme to defraud clients of FEP Fund I, clients P.B., P.B. II, P.B. Trust, and P.B Foundation; client B.G.; client J.H.; and clients J. & J.S., and to obtain money and  property by means of false and fraudulent promises, representations, and promises.

### MANNER AND MEANS

It was part of the scheme that:

3.      Paragraphs 87 through 101 of Counts One through Five are incorporated here.

### THE WIRING

4.      On or about November 1, 2015, in the District of Massachusetts, having devised and intending to devise this scheme, the defendant

### LEE D. WEISS,

for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an e-mail from defendant WEISS  to J.H. in Massachusetts via the Internet in which defendant WEISS reassured J.H. that that her debt investments in MIP Global and her equity investment in MIP Bahamas were secure and that she could expect payment shortly.

All in violation of Title 18, United States Code, Sections 1343.

## COUNT SEVEN
### (Mail Fraud Executed December 2014)

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.        Paragraphs 1 through 85 of Counts One through Five are incorporated here.

### THE SCHEME TO DEFRAUD

2.        From in or about  July 2011, to in or about  November 1, 2015, in Wayne and West Chester, in the Eastern District of Pennsylvania, and elsewhere, the defendant,

### LEE D. WEISS,

devised and intended to devise a scheme to defraud clients of FEP Fund I, clients P.B., P.B. II, P.B. Trust, and P.B Foundation; client B.G.; client J.H.; and clients J. & J.S., and to obtain money and  property by means of false and fraudulent promises, representations, and promises.

### MANNER AND MEANS

It was part of the scheme that:

3.        Paragraphs 87 through 101 of Counts One through Five are incorporated here.

### THE MAILING

4.        On or about December 10, 2014, in the Eastern District of Pennsylvania, and elsewhere, having devised and intending to devise this scheme, the defendant

### LEE D. WEISS,

for the purpose of executing the scheme described above, and attempting to do so, knowingly caused to be delivered by the United States Postal Service or by private or commercial interstate carrier, according to the directions thereon, check number 2505 in the amount of about $35,965.76, to an employee of FEP located in the Eastern District of Pennsylvania, in payment of B.G.'s first quarter 2015 fee to FEP for financial advisory and asset management services.

All in violation of Title 18, United States Code, Section 1341.

## COUNT EIGHT
### (Mail Fraud Executed March 2015)

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 85 of Counts One through Five are incorporated here.

### THE SCHEME TO DEFRAUD

2.      From in or about  July 2011 to in or about  November 1, 2015, in Boston, in the District of Massachusetts, and Los Angeles, in the Central District of California, the defendant

### LEE D. WEISS

devised and intended to devise a scheme to defraud clients of FEP Fund I, clients P.B., P.B. II, P.B. Trust, and P.B Foundation; client B.G.; client J.H.; and clients J. & J.S., and to obtain money and  property by means of false and fraudulent promises, representations, and promises.

### MANNER AND MEANS

It was part of the scheme that:

3.      Paragraphs 87 through 101 of Counts One through Five are incorporated here.

### THE MAILING

4.      On or about March 4, 2015, in the District of Massachusetts and the Central District of California, having devised and intending to devise this scheme, the defendant

### LEE D. WEISS,

for the purpose of executing the scheme described above, and attempting to do so, knowingly caused to be delivered by the United States Postal Service or by private or commercial interstate carrier, according to the directions thereon, check number 2522 in the amount of about

$35,965.76, from employee or assistant to victim B.G. in California to an employee of FEP located in the District of Massachusetts, in payment of B.G.'s third quarter 2014 fee to FEP for financial advisory and asset management services.

   All in violation of Title 18, United States Code, Section 1341.

## <u>NOTICE OF FORFEITURE</u>

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Sections 1341 and 1343, set forth in this information, defendant

### **LEE D. WEISS**

shall forfeit to the United States of America any property constituting, or derived from, proceeds traceable to the commission of such offenses, including, but not limited to the sum of $7,050,000.

2.      If any of the property described above, as a result of any act or omission of the defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred to, sold to, or deposited with a third party;

      c.      has been placed beyond the jurisdiction of this Court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, § 2461.

_Ronald A. Sarachan_ for

_____
**WILLIAM M. McSWAIN**
**United States Attorney**

No. _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

<u>Criminal Division</u>

THE UNITED STATES OF AMERICA

*v.*

LEE D. WEISS

INFORMATION

Counts

**18 U.S.C. § 1343 (wire fraud and attempted wire fraud – 6 counts)**
**18 U.S.C. § 1341 (mail fraud and attempted mail fraud – 2 counts)**
**Notice of Forfeiture**

.

_____

Filed in open court this _____ day,

Of _____ A.D. 20 _____

_____ Clerk

Bail, $ _____