IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | NO. 20-163 |
| | : | |
| LEE D. WEISS | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          March 2, 2022

## I.    INTRODUCTION

This is a mail and wire fraud action against Lee D. Weiss, a former investment advisor. Weiss has filed five pretrial motions that remain pending before the Court: (1) a motion to dismiss as untimely; (2) a motion to dismiss for duplicity; (3) a motion to dismiss for lack of venue; (4) a motion for bill of particulars; and (5) a motion to strike surplusage from the second superseding indictment.

The government does not oppose Weiss' motion to dismiss for lack of venue, as it acknowledges that Counts Six and Eight of the Second Superseding Indictment fail to charge venue in the Eastern District of Pennsylvania. The Court will therefore grant that motion, and Counts Six and Eight of the Second Superseding Indictment will be accordingly dismissed without prejudice.

For the reasons set forth below, the Court will deny the following three motions: (1) motion to dismiss as untimely; (2)

1

motion to dismiss for duplicity; and (3) motion for a bill of particulars. Weiss' motion to strike surplusage from the Second Superseding indictment will be granted in part and denied in part as detailed below.

## II.   BACKGROUND

On June 12, 2018, the government made a Mutual Legal Assistance Treaty ("MLAT") request to the government of the Cayman Islands for evidence of events underlying potential criminal charges against Defendant Weiss. A grand jury judge issued an order pursuant to 18 U.S.C. § 3292, which tolled the running of the statute of limitations period starting on June 12, 2018.

Counsel for the Cayman crown sent a formal letter to the government, along with documents produced, on November 2, 2018. Over two weeks later, on November 19, Cayman counsel sent another email to the U.S. Government representative stating that they had since come into possession of a laptop (the "Laptop") which contained information that could prove relevant to any potential charges against Weiss. Cayman authorities declined to mail the Laptop to the U.S., stating that it was fragile and likely to be damaged in transit. U.S. authorities eventually retrieved the Laptop around February 23, 2019.

On April 29, 2020, Weiss was charged by information with six counts of wire fraud and two counts of mail fraud pursuant

to 18 U.S.C. §§ 1343 and 1341. On June 5, 2020, Weiss moved to dismiss the Information for lack of jurisdiction, arguing that it was invalid because it did not contain a waiver of his Fifth Amendment right to a grand jury. The Court dismissed the Information without prejudice on July 17, 2020.

In the meantime, on July 14, 2020, Weiss was charged by superseding indictment with the same six counts of wire fraud and two counts of mail fraud as had been charged in the information. On December 2, 2020, Weiss was charged by second superseding indictment (the "Second Superseding Indictment") with the same eight counts. The Second Superseding Indictment also added one additional count: Count Nine, which charges investment advisor fraud in violation of 15 U.S.C. §§ 80b-6 and 80b-17 and 18 U.S.C. Section § 2.

## III. DISCUSSION

### A.   Motion to Dismiss as Untimely

Weiss first moves to dismiss Counts One, Two, Three, and Seven of the Indictment as untimely.[1] Under 18 U.S.C. § 3282, felony charges are timely if "the indictment is found or the information is instituted" within five years of the alleged offense. 18 U.S.C. § 3282. The predicate offenses underlying

---

[1]   Weiss' motion initially argues that Counts One through Five, Seven, and Eight were all untimely. But, as Weiss acknowledges in his reply brief (ECF No. 77), this was based on a miscalculation. He maintains that even after correcting his initial miscalculation, Counts One, Two, Three, and Seven were not timely brought.

Counts One, Two, Three, and Seven occurred on January 30, 2015, February 13, 2015, February 17, 2015, and December 10, 2014, respectively.

Whether the challenged counts were timely brought turns on (1) how long the statute of limitations was tolled pursuant to the government's MLAT request; and (2) when the prosecution of this matter commenced. The parties agree that the statute of limitations was tolled beginning on June 12, 2018 when the MLAT request was made, but dispute when the tolling period ended and when the prosecution commenced. Weiss' motion makes two principal arguments: (1) tolling of the limitations period stopped on November 2, 2018, upon Cayman authorities' first response to the request, and (2) that prosecution of this matter did not commence with the filing of the April 29, 2020 information; rather, it began with the filing of the superseding indictment on July 14, 2020. Each of these arguments will be addressed in turn.

### 1. Tolling of the Limitations Period

When the government seeks evidence related to a particular offense from a foreign country, a district court before which a grand jury is impaneled to investigate that offense may suspend the statute of limitations if the court finds by a preponderance of the evidence that it "reasonably appears" that the evidence is in that foreign country. 18 U.S.C. § 3292(a)(1). Section

3292(c) provides two alternative maximum periods for a suspension of the statute of limitations: (1) the shorter of (a) the number of days between the submission of the MLAT request and the "final action" on that request; or (b) six months; or (2) three years if no final action is taken. Id. at § 3292(b)-(c). Weiss maintains that Cayman authorities took "final action" pursuant to the government's MLAT request with their November 2, 2018 response, or, at the very least, with their tendering of the Laptop to U.S. authorities.

The MLAT statute does not define "final action." The Third Circuit has not definitively defined it either, but it has addressed what may constitute "final action" in two cases: United States v. Atiyeh, 402 F.3d 354 (3d Cir. 2005), and United States v. Hoffecker, 530 F.3d 137 (3d Cir. 2008). The Atiyeh court suggested that there has been final action under the statute when the government "has received all requested foreign evidence from foreign authorities." 402 F.3d at 362. But the Hoffecker court later found that Atiyeh's definition "merely may have set forth nonexclusively one basis for concluding that there has been a 'final action.'" 530 F.3d at 160 n.3. The Third Circuit noted further in Hoffecker that "[o]ther courts of appeals have concluded that 'final action' for purposes of section 3292(b) occurs when the foreign authority makes a dispositive response to each of the items listed in the

government's official request." Id. (citing United States v. Hagege, 437 F.3d 943, 955 (9th Cir. 2006); United States v. Bischel, 61 F.3d 1429, 1434 (9th Cir. 1995); United States v. Torres, 318 F.3d 1058, 1065 (11th Cir. 2003)). The court ultimately declined to definitively resolve the question of when exactly "final action" has occurred, as it would not have had an effect on the outcome of that case. Id.

Weiss urges the Court to follow the "dispositive response" theory of final action as referenced in Hoffecker. See id. (noting that courts of appeals had found that "final action" had occurred under the statute "when the foreign authority makes a dispositive response to each of the items listed in the government's official request") (collecting cases). However, even under this more lenient theory, Weiss cannot show that Cayman authorities took any final action early enough to bar any of the counts brought against him.

Cayman counsel's November 2, 2018 communication did not constitute final action because it did not contain a "dispositive response to each of the items listed in the government's official request."[2] Id. For example, the MLAT

---

[2]    As noted in Hoffecker, the Fifth Circuit's conception of the "dispositive response" test is slightly narrower than this summary of the test as it exists in other circuits. It found in United States v. Meador, 138 F.3d 986, 992 (5th Cir. 1998), that final action occurs "when the foreign government believes that it has completed its engagement and communicates that belief to our government." Meador, 138 F.3d at 992. But Weiss has not pointed to final action under the Fifth Circuit's conception of the test, either. The Meador court found that final action had occurred when the

request included, inter alia, a specific request to "[p]lease
identify the individuals involved in any audits of, or other
work performed for, FEP Fund I or the Catamaran Fund,
respectively, from January 1, 2009, to the present" and a
request to "interview such individuals, with the participation
of the U.S. authorities, regarding their knowledge of the
matters discussed herein." Gov't Resp. Ex. A at 30, ECF No. 71-
1. Cayman authorities' November 2, 2018 response described the
enclosed material as the following: "1. Affidavit of Mr. Glen
Trenouth of BDA Cayman Ltd dated 19 October 2018; and 2. DVD
containing true copies of original documents as per your
request." Id. at Ex. C, ECF No. 71-3. The letter did not
otherwise address the specific request to identify and interview
individuals involved in the identified audits. Therefore, the
Court cannot say that the November 2, 2018 communication
constituted final action even under the more lenient standard.

　　　Weiss next argues that "final action" must have occurred on
November 19, 2018, when Cayman authorities notified the
government of the existence of the Laptop. But the November 19
communication did not address the request to identify and
interview the individuals involved in any audits of the

---

foreign government stated in a letter that "[a]ccording to my documentation,
the request has now been completely satisfied." Id. at 989. Nothing in Cayman
authorities' communications to the government on November 2, 2018 or
afterward clearly communicates any belief that its engagement with the
government was completed.

identified funds, either. See Gov't Resp. Ex. A at 30, ECF No.
71-1. The email merely stated that Cayman counsel had "been
informed that the audit is actually stored on a laptop which the
financial institution [had] provided" to them. Gov't Resp. Ex.
D, ECF No. 71-4. Finding no dispositive response to the specific
request to identify and interview any of the identified
individuals, the Court accordingly cannot find that Cayman
authorities took any final action here that would stop the
tolling of the statute of limitations. See generally United
States v. Minter, 45 F. Supp. 3d 1390, 1399 (N.D. Ga. 2014)
(finding that the foreign authority did not take final action
when it interviewed only five individuals and the government had
requested six interviews); United States v. Ratti, 365 F. Supp.
2d 649, 653 (D. Md. 2005) (no final action when the foreign
government did not address specific requests for interviews).

Because Weiss has not identified a point at which Cayman
authorities made a "dispositive response to each of the items
listed in the government's official request," there is no "final
action" that would end the tolling period under the MLAT
statute. Hoffecker, 530 F.3d at 160 n.3. Therefore, under 18
U.S.C. § 3292(c), the period of suspension of the statute of
limitations extended three years after the initial tolling on
June 12, 2018. Under these circumstances, even taking as true
Weiss' argument that the prosecution commenced with the filing

8

of the superseding indictment on July 14, 2020, each count in the Indictment was timely brought.

### 2.   When the Prosecution Commenced

Because Weiss has not established that the tolling of the limitations period ended with any "final action" of Cayman authorities, the Court need not address his additional argument that the Information filed on April 29, 2020 did not effectively commence the prosecution of this matter. In any event, even if there were some final action taken by Cayman authorities that stopped the tolling period, Weiss' motion still fails because the Court finds that the filing of the Information stopped the statute of limitations from running.

The Third Circuit has not addressed the question of whether an information satisfies the statute of limitations when it does not contain a waiver of indictment. The case that most directly addresses the issue is United States v. Burdix-Dana, 149 F.3d 741 (7th Cir. 1998), in which the Seventh Circuit held that an information that did not contain a waiver was properly "instituted" for the purposes of the statute of limitations. 149 F.3d at 743. And the Seventh Circuit's reasoning in Burdix-Dana has been relied upon within this District to similarly find that "the filing of an information with the court 'instituted' it within the meaning of the statute of limitations even though the defendant had not formally waived the right to indictment."

United States v. Pennant, No. 04-cr-828, 2009 WL 364974, at *3
n.7 (E.D. Pa. Feb. 11, 2009) (citing Burdix-Dana, 149 F.3d 741,
743 (7th Cir. 1998); United States v. Stewart, 425 F. Supp. 2d
727, 735 (E.D. Va. 2006); United States v. Watson, 941 F. Supp.
601, 603-604 (N.D. W.Va. 1996)).

Weiss relies upon Jaben v. United States, 381 U.S. 214
(1965), to argue that an information is not "instituted" unless
the government were able to actually proceed with the
prosecution on that information. But as the Seventh Circuit
found in Burdix-Dana, "Jaben did consider the meaning of the
term "institute," but in the context of a different statute
governing criminal complaints, not informations." Burdix-Dana,
149 F.3d at 742 n.1. In the absence of Third Circuit direction,
the weight of authority indicates that the prosecution of this
matter commenced, for the purposes of the statute of
limitations, with the filing of the information on April 29,
2020.

Because the statute of limitations on all counts of the
Indictment were tolled for three years under 18 U.S.C. §
3292(c)(1), and because the prosecution of this matter was
properly instituted with the filing of the information on April
29, 2020, all counts in the Indictment are timely. Weiss' motion
to dismiss as untimely will be accordingly denied.

**B.** **Motion to Dismiss for Duplicity**

Weiss next moves to dismiss as duplicitous Counts One through Nine of the Second Superseding Indictment. Because the Court finds that each count of the Second Superseding Indictment details only one scheme, Weiss' motion will be denied.

An indictment is duplicitous where it combines two or more distinct and separate offenses in a single count. United States v. Haddy, 134 F.3d 542, 548 (3d Cir. 1998). Duplicitous counts may conceal the specific charges, prevent the jury from deciding guilt or innocence with respect to a particular offense, exploit the risk of prejudicial evidentiary rulings, or endanger fair sentencing. Id. In order to avoid these concerns, courts will either dismiss the duplicitous count, or require the government to make an election between charging one, but not all of the offenses. See United States v. Sourlis, 953 F. Supp. 568, 572 (D.N.J. 1996); United States v. Starks, 515 F.2d 112, 117 (3d Cir. 1975).

In analyzing a count alleged to be duplicitous, "a court's review is limited because 'the task is not to review the evidence . . . to determine whether it would support a charging several crimes rather than just one, but rather solely to assess whether the indictment itself can be read to charge one violation in each count.'" Sourlis, 953 F. Supp. at 572 (quoting United States v. Mastelotto, 717 F.2d 1238, 1244 (9th Cir.

11

1983)). The question is "whether the indictment may be read to allege a single unified scheme in each count." Id. (quoting Mastelotto, 717 F.2d at 1244). The fact that some of the facts alleged could constitute separate offenses does not make the count duplicitous provided that only a single execution of a fraudulent scheme is alleged. See United States v. King, 200 F.3d 1207, 1212-13 (9th Cir. 1999); see also Sourlis, 953 F. Supp. at 572.

In determining whether a count of an indictment is duplicitous, the court must first determine the unit of prosecution based on the language of the relevant statute. See United States v. Root, 585 F.3d 145, 150 (3d Cir. 2009) (citing Haddy, 134 F.3d at 548). For the federal mail and wire fraud statutes—under which counts One through Eight are charged in this case—each mailing or wiring is a separate unit of prosecution even when made in furtherance of the same scheme. See United States v. Hampton, No. 15-cv-302, 2021 WL 1088289, at *7 (E.D. Pa. Mar. 22, 2021) (citing United States v. Castillo, 829 F.2d 1194, 1199 (1st Cir. 1987); United States v. Conley, 833 F. Supp. 1121, 1141 (W.D. Pa. 1993); United States v. Hart, 524 F. Supp. 381, 383 (E.D. Pa. 1981)).

Weiss first argues that Counts One through Eight are duplicitous because they allege at least two distinct schemes. The first, according to Weiss, pertains to investments in a

12

company called "Globe 360," which was allegedly created to acquire and operate a U.S. tobacco company. The second distinct "scheme" Weiss points to pertains to investments in an entity called "MIP Global." Weiss further argues that the MIP Global allegations could in fact be read to allege four separate schemes, because they allege the defrauding of four distinct clients or client groups. Because these distinct "schemes," which are laid out in paragraphs 1-85 of the Second Superseding Indictment, form the basis for the wire fraud offenses alleged in Counts One through Five and are incorporated by reference to form the basis for the mail and wire fraud charges in Counts Six through Eight, Weiss argues that each count alleges multiple offenses and subjects him to "all the dangers of duplicitous pleading." Def's. Mot. at 4, ECF No. 63.

However, various federal courts have found that the fact that a count alleges multiple methods of carrying out a scheme, or multiple victims of a scheme, does not make that count duplicitous. See, e.g. United States v. Morse, 785 F.2d 771, 773 (9th Cir. 1986) ("[T]he defrauding of different people over an extended period of time, using different means and representations, may constitute but one scheme.")(quotations and citations omitted); United States v. Zeidman, 540 F.2d 314, 318 (7th Cir. 1976) ("Schemes to defraud by mail often are multi-faceted and therefore the various means used in committing the

13

offense may be joined without duplicity."); United States v. Zolp, 659 F. Supp. 692, 725 (D.N.J. 1987) ("The fact that a single scheme may have more than one victim . . . does not alter the fact only one scheme is charged.") (citing Morse, 785 F.2d at 774; United States v. Margiotta, 646 F.2d 729, 733 (2d Cir. 1981)).

The Second Superseding Indictment alleges that Weiss defrauded his victims in his capacity as an owner who exercised control over a limited partnership known as Family Endowment Partners, LP ("FEP"). Weiss' alleged victims were clients of FEP, and he funneled their investments into both Globe 360 and MIP Global in his capacity as owner of FEP. The investments in Globe 360 and MIP Global do not represent distinct schemes, but rather are two means used to accomplish the same alleged scheme: to enrich Weiss to his FEP clients' detriment. And Counts One through Eight each allege a distinct unit of prosecution—i.e., a mailing or wire—made in furtherance of the same consistent scheme. Therefore, Counts One through Eight are not duplicitous.

Weiss next argues that Count Nine, which alleges a willful violation of the Investment Adviser Act, 15 U.S.C. §§ 80b-6 and 80b-17, and aiding and abetting under 18 U.S.C. § 2, is duplicitous because it purports to incorporate by reference all other facts alleged in the Second Superseding Indictment and because it "charges three distinct categories of prohibited

14

conduct under 15 U.S.C. 80b-6." Def's Mot. at 5, ECF No. 63.
Because the Second Superseding Indictment may be read to allege
only one scheme, as explained above, Count Nine is not
duplicitous merely because it incorporates by reference the
facts used to support the other counts. Moreover, the three
categories of prohibited conduct that Count Nine attributes to
Weiss represent means of accomplishing the same scheme, rather
than distinct schemes themselves. See Root, 585 F.3d at 153
("Federal Rule of Criminal Procedure 7(c)(1) allows a single
count to allege 'that the defendant committed [the offense] by
one or more specified means.") Therefore, Count Nine is also not
duplicitous. Weiss' motion to dismiss for duplicity will
accordingly be denied in its entirety.

   **C.   Motion for Bill of Particulars**

   Weiss next moves for a bill of particulars as to Count
Nine. The Court may direct the government to file a bill of
particulars, or a defendant may move for a bill of particulars.
See Fed. R. Crim. P. 7(f). Whether to grant a bill of
particulars lies in the discretion of the trial court, and
denial is reviewed for abuse of discretion. See United States v.
Armocida, 515 F.2d 49, 54 (3d Cir. 1975). "The purpose of the
bill of particulars is to inform the defendant of the nature of
the charges brought against him to adequately prepare his
defense, to avoid surprise during the trial and to protect him

against a second prosecution for an inadequately described offense." United States v. Addonizio, 451 F.2d 49, 63-64 (3d Cir. 1971) (quoting United States v. Tucker, 262 F. Supp. 305, 308 (S.D.N.Y. 1966)).

A bill of particulars is "more akin to the functions of an indictment than to discovery," United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985), in that its function is to supplement the pleading requirements applicable to the indictment "when the indictment itself is too vague and indefinite for such purposes," Addonizio, 451 F.2d at 64 (quoting United States v. Haskins, 345 F.2d 111, 114 (6th Cir. 1965)), see also United States v. Moyer, 674 F.3d 192, 203 (3d Cir. 2012) ("For an indictment to be sufficient, it must contain all the elements of a crime and adequately apprise the defendant of what he must be prepared to meet."). Accordingly, a bill of particulars is "not a vehicle for the defendant to obtain wholesale discovery of the government's evidence of theories." United States v. Ligambi, No. 09-cv-0496, 2012 WL 2362638, at *2 (E.D. Pa. June 12, 2012) (citing United States v. Eufrasio, 935 F.2d 553, 575 (3d Cir. 1991); Smith, 776 F.2d at 1111; Addonizio, 451 F.2d at 64). "Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." Smith, 776 F.2d at 1111.

An indictment is sufficient and obviates the need for a bill of particulars when "it substantially follows the language of the criminal statute, provided that its generality does not prejudice a defendant in preparing his defense nor endanger his constitutional guarantee against double jeopardy." Eufrasio, 935 F.2d at 575. Further, when the government supplements a detailed charging document with substantial discovery, the defendant's claim for a bill of particulars is weakened. United States v. Urban, 404 F.3d 754, 772 (3d Cir. 2005).

Weiss argues that a bill of particulars is warranted as to Count Nine because it leaves him to "guess at which 'device, scheme, or artifice,' or 'transactions, practices and courses of business,' or non-transactional 'acts, practices, and courses of business' underlie the charge." Def's. Mot. at 2, ECF No. 65. Weiss acknowledges that extensive discovery has been provided in this case, but argues that such discovery is essentially a "document dump" that is so extensive that it "confuses rather than clarifies the question of what conduct is alleged in Count Nine." Id. at 3.

The Court finds that Count Nine of the Second Superseding Indictment is sufficient, and that a bill of particulars is not warranted in this case. Count Nine "substantially follows the language" of 15 U.S.C. § 80b-6(1)-(2), (4), which is the statute under which it charges. Eufrasio, 935 F.2d at 575. Moreover,

Weiss produces no authority that supports his argument that he is entitled to a bill of particulars because the government has produced too much discovery; on the contrary, full access to discovery has been repeatedly found to "weaken[] the case for a bill of particulars." Urban, 404 F.3d at 772. In sum, the Second Superseding Indictment's incorporation of detailed facts and recitation of the statutory elements, when combined with open access to discovery, is enough to adequately apprise Weiss of the charges brought against him in Count Nine. Weiss' motion for a bill of particulars will accordingly be denied.

   D.   **Motion to Strike Surplusage**

Weiss next moves to strike language from the Second Superseding Indictment that he claims is prejudicial surplusage. He specifically objects to paragraphs 30 and 31, which allege that two alleged victims of Weiss' actions instituted an action against Weiss and FEP with the American Arbitration Association and were ultimately awarded an amount in excess of $48,000,000. Paragraph 31 also alleges that the arbitration panel specifically found that Weiss "had breached his fiduciary duty, had made investments with minimal or non-existent due diligence, had issued portfolio statements that were misleading, and had recommended investments that were entirely inappropriate" for the two victims. Second Superseding Indictment ¶ 31. Weiss argues that telling the jury that a panel of arbitrators already

found that Weiss had wronged his investor clients to such an extent will lead to unfair prejudice against him, and that the prior arbitration award does not supply any element of the government's case.

A court may strike surplusage from an indictment upon a defendant's motion pursuant to Fed. R. Crim. P. 7(d). "This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Fed. R. Cir. P. 7(d) advisory committee's note. A court may strike surplusage from the indictment or information when it is <u>both</u> irrelevant (or immaterial) and prejudicial. <u>See</u> <u>United States v. Hedgepeth</u>, 434 F.3d 609, 612 (3d Cir. 2006). "Logic demands the conjunctive standard: information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion." <u>Id.</u> at 612.

While Weiss is correct that the challenged paragraphs may be prejudicial, he has not shown that they are entirely irrelevant. The fact that an arbitration action was brought and the amount of the award are relevant to the government's case, as the Second Superseding Indictment later alleges that Weiss misappropriated his clients' funds to fund his legal defense to

the arbitration action and to pay fees to the American
Arbitration Association. <u>See</u> Second Superseding Indictment ¶¶
41, 52.

However, the Court finds that the identity of the
individuals who brought the arbitration action and the specific
findings of the arbitration panel are both irrelevant and
prejudicial. These allegations are prejudicial because they
would essentially amount to telling the jury that the
arbitration panel already found Weiss guilty of the charges
alleged against him in this case. And the adjudication of
related issues by another factfinder is not relevant in itself
to the government's ability to prove its case in this Court.

Therefore, Weiss' motion to strike will be granted in part
and denied in part. The Court will grant the motion as to
paragraph 30, which names the victims who brought the
arbitration action against Weiss, and also as to the following
language from paragraph 31:

    a)   "in favor of J. & J.S.," and

    b)   "That award found that defendant WEISS had
         breached his fiduciary duty, had made investments
         with minimal or non-existent due diligence, had
         issued portfolio statements that were misleading,
         and had recommended investments that were
         entirely inappropriate for J. & J.S."

The motion will be denied as to the remaining language in
paragraph 31.

**IV.   CONCLUSION**

As set forth above, Weiss' motion to dismiss for lack of venue will be granted and Counts Six and Eight will be accordingly dismissed without prejudice. Weiss' motion to Strike Surplusage will be granted in part and denied in part.

Weiss' motion to dismiss as untimely, motion to dismiss for duplicity, and motion for a bill of particulars will be denied.

An appropriate order follows.